IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID A. FENNER                                                                                        PLAINTIFF

VS.                                              CIVIL NO. 06-5156

MICHAEL J. ASTRUE[1], Commissioner
SOCIAL SECURITY ADMINISTRATION                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, David Fenner, brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were protectively filed on May 28, 2004, and May 21, 2004,[2] respectively, alleging an onset date of September 24, 1999, due to depression, a disorder of the back, and carpal tunnel syndrome. (Tr. 52-54). An administrative hearing was held on May 24, 2005. (Tr. 466-508). Plaintiff was present and represented by counsel.

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2]Plaintiff filed previous applications for DIB and SSI in November 1999 and April 2000. His first application was denied at the initial and reconsideration stages without further appeal. (Tr. 42-46, 49-50). Plaintiff's 2000 application was dismissed after plaintiff failed to appear for two scheduled hearings without good cause. (Tr. 196-197).

At the time of the administrative hearing, plaintiff was 46 years old and possessed a ninth grade education. (Tr. 469, 471). The record reveals that he had past relevant work ("PRW") experience as a laborer and a receiving checker. (Tr. 20, 104-107, 128).

The Administrative Law Judge ("ALJ") rendered an unfavorable decision on August 24, 2005. (Tr. 26). He concluded that plaintiff's impairments were severe but determined that they did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to lift 20 pounds frequently and 10 pounds occasionally and sit, stand, and walk for a total of six hours during an eight-hour workday. Further, the ALJ determined that the plaintiff could occasionally stoop and climb ladders, ropes, and scaffolds; frequently climb ramps and stairs, balance, and crawl; and, must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could still perform light work at Manpower or StaffMart, custodial work, or light packer jobs. (Tr. 26).

On May 3, 2006, the Appeals Council declined to review this decision. (Tr. 8-10). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs and the case is now ready for decision. (Doc. # 12, 16).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find

it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment

3

or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Evidence Presented:**

On August 27, 1999, plaintiff injured his left arm in a grinder while at work. (Tr. 154-156). An x-ray of the left arm showed a soft tissue injury with no evidence of fracture. (Tr. 157). On August 30, 1999, Dr. James Robertson placed plaintiff on light duty. (Tr. 161). Plaintiff was noted to have a fair range of motion in his wrist without severe pain. When the sutures were removed on September 7, 1999, plaintiff's blood pressure was elevated at 130/92. (Tr. 160). Dr. Robertson instructed him to markedly reduce his salt intake and to have a blood pressure follow-up the following month.

On September 24, 1999, Dr. Robertson noted full grip strength and full active motion in plaintiff's wrists. (Tr. 164). As such, he released plaintiff to full work duty. (Tr. 164).

On May 17, 2000, Dr. Grafton Thurman performed a consultative examination of plaintiff. (Tr. 166-169). Plaintiff complained of joint arthritis, back problems, and shortness of breath. An examination revealed stiffness in the back, no apparent shortness of breath or chest pain, wheezing when lying down, a full range of motion in all peripheral joints except for the right knee and left hip,

4

no evidence of significant peripheral joint deformity, modest bilateral proximal interphalangeal joint swelling in both hands, full range of motion in the cervical spine, full motor strength in all four extremities, an intact sensory exam, and active bilateral deep tendon reflexes. Pulmonary function studies were well above the level that would indicate any sort of decrease in physical capacity ability as a result of decreased pulmonary reserve, x-rays of the right knee and left hip were normal, and an x-ray of the lumbosacral spine showed marked narrowing of the L5-S1 disk space with sclerosis on either side of the disk space and some anterior and lateral lipping due to osteophyte formation. Dr. Thurman diagnosed plaintiff with peripheral arthritis, back pain due to spondylolisthesis and degenerative disc disease at L5-S1 level, and shortness of breath caused by asthma. (Tr. 169).

Dr. Thurman also prepared a physical RFC assessment of plaintiff. (Tr. 170-171). He found that plaintiff could lift ten pounds occasionally and less than ten pounds frequently, stand and walk at least two hours during an eight-hour workday, and sit for about six hours during an eight-hour workday. (Tr. 170-171).

In July and September 2000, plaintiff was treated for paresthesias, lower back pain, rectal bleeding, and hypertension. (Tr. 190). He was prescribed Dyazide, Motrin, and Flexaril. (Tr. 190).

Plaintiff saw Dr. Phillip Nanney on July 16, 2003. (Tr. 268). Plaintiff complained of a recent flare-up of lower back pain with associated muscle spasms, weakness, slurred speech, facial drooping, and numbness in his arm. An examination revealed no lower lumbar findings, equal reflexes in the upper and lower extremities, equal grip, negative straight leg raising, and intact sensation. (Tr. 267-268). However, x-rays of his thoracic spine revealed some dorsal kyphosis and some mild scoliosis but no gross disk problems. As such, Dr. Nanney diagnosed plaintiff with neck and back pain, right

arm paresthesias, possible TIA's, paraspinal muscle spasm, urinary incontinence, reflux, and tobacco use. Plaintiff indicated that he had periodically taken Excedrin to control his pain. Dr. Nanney gave plaintiff some samples of Prevacid and planned a follow-up if his symptoms worsened. (Tr. 268).

On April 9, 2004, plaintiff complained of lower back pain, hypertension and an eczematous rash on his foot. (Tr. 265-266). Dr. Nanney changed plaintiff's prescription for HCTZ to Atenolol and gave him some samples of Vioxx. He also prescribed a Medrol Dosepak and directed plaintiff to follow-up in about six weeks. (Tr. 266).

On April 16, 2004, plaintiff consulted with Dr. P. Sean Kelly. (Tr. 418-419). He complained of pain in his right side, swelling in his hands and feet, right leg numbness, chest pain, and blurred vision. An examination revealed mild abdominal tenderness in the lower left quadrant and right lower quadrant suprapubic areas, tenderness in the right lower back, and pain on raising the right leg forty-five degrees. Dr. Kelly assessed plaintiff with lower back pain, chest discomfort, and abdominal pain. He ordered a cardio test, an x-ray of the lumbar spine, and lab tests. (Tr.419). X-rays of plaintiff's lumbar spine revealed grade II spondylolisthesis at the lumbar sacral disc space with possible associated spondylolysis. (Tr. 432).

On April 23, 2004, plaintiff had a follow-up with Dr. Kelly. (Tr. 416). The doctor reiterated his assessment of chest discomfort and lower back pain. He then prescribed Desyrel. (Tr. 416,417). An echocardiogram revealed no pericardial effusion and no pleural effusion. (Tr. 423-424). The study was characterized as essentially normal. (Tr. 424).

An MRI of plaintiff's lumbar spine performed on April 30,2004, showed a concentric disc bulge at the L3-4 level, which appeared to abut the left L3 nerve root laterally. (Tr. 430). There was

6

also spondylotic change and concentric disc bulge at the L4-5 level, which appeared to be producing some mild bilateral foraminal narrowing at the L4-5 and L5-S1 levels. Bilateral spondylosis at the L5 level with grade 2 L5-S1 spondylolisthesis was also noted. (Tr. 430).

Dr. Kwabena Agyeman performed a cardiolite stress test on plaintiff on May 3, 2004. (Tr. 428-429). The study was essentially normal, finding no evidence of inducible ischemia. However, match perfusion defects in the apex of the left ventricle were noted to be consistent with chronic scarring in that region. Plaintiff's heart was moderately enlarged, there was appropriate systolic thickening, marked apical hypokinesis, and overall global akinesis. Testing revealed an ejection fraction rate of 52 percent. (Tr. 428-429).

On May 7, 2004, Dr. Kelly repeated his diagnosis of chest discomfort and lower back pain and added Darvocet to plaintiff's medication regimen. (Tr. 414). Then, on May 14, 2004, Dr. Kelly refilled his Darvocet prescription. (Tr. 412-413).

This same date, Dr. Agyeman saw plaintiff for a follow-up examination. (Tr. 274). He diagnosed plaintiff with cardiomyopathy and hypertension. Chest x-rays and an electrocardiogram were negative for acute ischemic changes. (Tr. 280). Dr. Agyeman also reiterated his findings of chronic scarring, moderately enlarged left ventricle, and an ejection fraction rate of 52 percent and ordered liver function tests and a 2-D echocardiogram. (Tr. 274).

On May 18, 2004, plaintiff presented at the emergency room with complaints of chest pain and shortness of breath. (Tr. 275, 279-394). He stated that he had begun experiencing chest tightness after mowing his yard. (Tr. 279, 281). Plaintiff was admitted and treated by Dr. Agyeman. An electrocardiogram and chest x-rays were negative for acute ischemic changes. Further, heart

catheterization revealed an ejection fraction rate grater than sixty-five percent with normal systolic and diastolic function of the left ventricle and no evidence of obstructive coronary artery disease or a prior myocardial infarction. (Tr. 367). However, while hospitalized, plaintiff "developed [a] continuation of [his] previously noted low back symptoms." (Tr. 283). An examination revealed mild to moderate palpatory tenderness, palpable step-off in the area of the L5-S1 interspace, and right-sided L5 radiculopathy with pain into the dorsal and anterior aspect of the right foot and leg. MRI results showed grade II spondylolisthesis at L5-S1. (Tr. 283). Plaintiff was diagnosed with grade II spondylolisthesis at L5-S1 level with right sided L5 radiculopathy and given Toradol, Decadron, and Neurontin. (Tr. 284).

While in the hospital, records indicate that plaintiff described himself as self-employed, stating that he mowed yards. (Tr. 279, 287, 300). In fact, he told doctors that his pain had begun while he was mowing the lawn. (Tr. 279, 287). Plaintiff was given a financial resource handout and directed to call the business office for DSH programs and information regarding the resource of angels clinics. (Tr. 300). There is no indication that plaintiff ever did so.

X-rays of plaintiff's cervical spine dated October 8, 2004, revealed what appeared to be fusion of the C2 and C3 vertebral bodies with spondylotic change at C3-4, C4-5 and C5-6, levels with associated disc space narrowing and mild spurring. (Tr. 426). The soft tissues were unremarkable and no bony fracture was identified. An MRI also showed what appeared to be fusion of C2 and C3 with disc osteophyte complexes at C3-4, C4-5 and C5-6 levels, producing flattening of the cord and cervical spinal stenosis, most severe at C4-5. (Tr. 427). There was a broad-based central disc protrusion at C6-

7 level, which also produced central flattening of the cord but no definite spinal stenosis. Foraminal narrowing at C4-5 and C5-6 appeared to be more pronounced on the right. (Tr. 427).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

While the record does show that plaintiff has been diagnosed with cardiomyopathy and hypertension, testing has revealed that his ejection fraction rate is between fifty-two and sixty-five percent. *See* 20 C.F.R. Pt. 404, subpart. P, App. 1, § 4.04 (requiring a left ventricular ejection fraction of thirty percent or less and a cardiologist's conclusion that the performance of an exercise test will

9

present a significant risk to the individual to meet the listing). Further, plaintiff's doctor has indicated that plaintiff's hypertension is treatable via beta blockers. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). As the United States Court of Appeals for the Eighth Circuit has held that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis, we find substantial evidence to support the ALJ's conclusion that this condition did not render plaintiff disabled. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

The records also reveal that plaintiff suffers from spondylolisthesis at L5-S1 level with right sided L5 radiculopathy and possible carpal tunnel syndrome for which he has been prescribed Toradol, Decadron, and Neurontin. (Tr. 284). However, plaintiff did not seek extensive medical treatment for his alleged impairments during the relevant time period. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Plaintiff was treated for back pain in 2000 and did not return for treatment until 2003. (Tr. 166-169, 190, 268). Then, it was another nine months before he sought further treatment for this condition. (Tr. 268, 265-266). Following two months of treatment, plaintiff went without treatment for an additional three months. (Tr. 275, 426). Had his condition been as severe as alleged, we believe he would have sought more consistent treatment.

We also note that, in spite of these impairments, plaintiff continued to work on at least a part-time basis. In April 2004, plaintiff was reportedly doing "a lot of manual labor." (Tr. 265-266). Then,

AO72A
(Rev. 8/82)

in May 2004, plaintiff indicated that he was self-employed as a lawn care specialist.[3] (Tr. 279, 287, 300). Although the ALJ concluded that this work did not rise to the level of substantial gainful activity, it does demonstrate plaintiff's ability to perform some work. As such, it belies a finding of total disability. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that ability to perform part-time work belied plaintiff's claim of disability).

Plaintiff also alleges disability due to depression. However, the evidence fails to establish a consistent pattern of treatment for this impairment. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). At the hearing, plaintiff testified that Dr. Kelly had diagnosed him with depression and prescribed an anti-depressant. (Tr. 491). Although he testified to experiencing crying spells and suicidal ideations, there is no evidence in the record to substantiate his claims. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). These symptoms were not reported to plaintiff's physicians. As such, we can not say that plaintiff's mental impairment was as severe as alleged.

Although plaintiff contends that he failed to seek consistent medical treatment due to his financial situation, the record is also devoid of evidence to support this allegation. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical

---

[3] We note plaintiff's testimony that he last performed yard work in 1999 and his fiance's testimony that she and his son performed the yard work after this date. (Tr. 495-499). However, the record does not make clear why plaintiff reported being self-employed as a lawn care specialist if his fiancé was the one performing the work. (Tr. 300). As the record also contains information concerning plaintiff's fiance's employment, we do not find error with the ALJ's determination that this evidence indicates that plaintiff continued to perform yard work after 1999.

11

problem." *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). However, it is also true that plaintiff's attempt to excuse his failure to pursue more aggressive treatment cannot be wholly excused due to his claim of financial hardship. There is no evidence in the record to suggest that plaintiff was denied treatment based on his lack of finances or that he attempted to obtain medical treatment from local indigent clinics. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).

    Plaintiff's own reports of his level of activity also undermine his subjective complaints. On forms he completed with his disability application, plaintiff reported an ability to care for his dogs, clean the house, pick-up trash out of his front yard, and perform yard work. (Tr. 138, 279, 287, 300). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

We also note that plaintiff's fiancé testified on his behalf. (Tr. 498-502). The ALJ properly considered her testimony but found it unpersuasive. We hold that this determination was well within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers from some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. §

13

404.15459©, while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, a consultative examination, plaintiff's subjective complaints, and his medical records. On June 11, 2000, Dr. H.T. Lavely, Jr., completed a physical RFC assessment of plaintiff. (Tr. 175-184). After reviewing plaintiff's medical records, he concluded that plaintiff could lift twenty pounds occasionally and ten pounds frequently, as well as sit, stand, and walk about six hours during an eight-hour workday. (Tr. 176). He also determined that plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 177).

On August 12, 2004, Dr. Diosdado Irlandez, a non-examining, consultative physician, completed an RFC assessment. He noted that plaintiff complained of back pain and right leg pain and numbness which was reasonable due to his impairment. (Tr. 393). Dr. Irlandez opined that at that time, plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; and, sit, stand and/or walk about six hours during an eight-hour workday. (Tr. 396). He also determined that plaintiff could frequently climb ramps and stairs, as well as balance and crawl, and occasionally climb ladders, ropes and scaffolds. In addition, Dr. Irlandez opined that plaintiff should avoid concentrated exposure to vibration. (Tr. 399).

14

On October 6, 2004, another state agency medical consultant completed an RFC assessment of plaintiff. (Tr. 403-410). After reviewing plaintiff's medical records, the consultant concluded that plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; and, sit, stand and/or walk about six hours in an eight-hour workday. (Tr. 404). The consultant also determined that plaintiff could frequently crawl and climb ramps and stairs and occasionally stoop and climb ladders, ropes and scaffolds. (Tr. 405). No manipulative, visual or communicative limitations were noted. (Tr. 406,407). However, the consultant did find that plaintiff should avoid concentrated exposure to vibration. (Tr. 407).

Although we are cognizant of Dr. Thurman's RFC assessment, we also note, as did the ALJ, evidence of plaintiff's continued employment and activity level. *See Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007) (citations omitted) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole."). At the time of plaintiff's last physical exam of record, Dr. Kelly noted only mild abdominal tenderness in the lower left quadrant and right lower quadrant suprapubic areas, tenderness in the right lower back, and pain on raising the right leg forty-five degrees. (Tr. 419). There is no evidence to suggest that plaintiff's physical activities were limited by Dr. Kelly or any of his other treating doctors following his recovery in 1999. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (same). Likewise, there is no objective evidence to show that plaintiff reported any physical limitations to his physicians. Accordingly, we find substantial evidence to support the ALJ's RFC assessment.

15

We also find that substantial evidence supports the ALJ's finding that plaintiff can still perform work that exists in significant numbers in the national economy. The ALJ asked the VE whether an individual with plaintiff's age, education and RFC would be able to perform other work available in the national economy. (Tr. 505). In response, the VE testified that such an individual would be able to perform light custodial work or work as a hand packer. (Tr. 505-506). Based on this testimony, the ALJ properly found plaintiff capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. 19-20). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 12th day of July 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)